United States District Court
Southern District of Texas

**ENTERED**

June 10, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ATLAS IMPORTS, INC., D/B/A THE HOUSE OF CHANDELIERS | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-18-1115 |
| ATAIN SPECIALTY INSURANCE COMPANY, | § § § | |
| Defendant. | § § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Atain Specialty Insurance Company's ("Atain") Motion for Partial Summary Judgment (Doc. 23), Atain's Motion to Exclude Sam Vacek, Atlas Imports, Inc., D/B/A The House of Chandeliers's (Doc. 24), ("Atlas") Motion to Exclude Michael Spinazzola (Doc. 25), and Atlas's Motion for Partial Summary Judgment (Doc. 27). The court has considered the motions, the responses, the replies, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Atain's Motion for Partial Summary Judgment be **GRANTED** and Atlas's Motion for Partial Summary Judgment be **DENIED**. Atain's Motion to Exclude is **GRANTED** and Atlas's Motion to Exclude is **DENIED**.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 45, Ord. Dated Dec. 5, 2019.

## I.  Case Background

This lawsuit concerns Atain's denial of Atlas's claim for insurance coverage after Atlas's inventory was damaged during Hurricane Harvey.

## A.  Factual Background

Atlas leases a retail store and warehouse located at 12002 Southwest Freeway, Suite A, Stafford, Texas 77072 (the "Warehouse"), where it stores and sells chandeliers, electronics, other lighting fixtures, and assorted inventory.[2]  Atlas's inventory is insured through a policy provided by Atain with a total policy limit of $500,000 (the "Policy").[3]

On or about August 25, 2017, Hurricane Harvey made landfall in Southeast Texas.[4]  On August 26, 2017, while Hurricane Harvey was meandering inland, EF1 tornadoes were reported to the south of the Warehouse.[5]  Sometime during the storm, some of Atlas's inventory inside of the Warehouse suffered water damage.  On August 31, 2017, Atlas submitted a claim to Atain under the Policy.[6]

Shortly thereafter, Atain hired VeriClaim, Inc. ("VeriClaim"), an independent adjusting company, to inspect the Warehouse and

---

[2]   See Doc. 1, Atain's Compl. p. 2.

[3]   See Doc. 27-2, Ex. A-1 to Atlas's Mot. for Part. Summ. J., The Policy p. 7.

[4]   See Doc. 1, Atain's Compl. p. 2.

[5]   See Doc. 24-2, Ex. B to Atain's Mot. to Exclude, Vacek Report p. 5.

[6]   See Doc. 6, Atlas's Compl. p. 6.

adjust Atlas's claim.[7]  Tim Frazier ("Frazier") was the VeriClaim
adjuster assigned to the claim.[8]  On September 15, 2017, Frazier,
along with Sam Sidaros ("Sidaros"), Atlas's owner, inspected the
Warehouse.[9]   Frazier identified water damage to Plaintiff's
inventory and recommended that a structural engineer be hired to
determine the source of the water intrusion that caused the
damage.[10]

     Atain hired Rimkus Consulting Group ("Rimkus") to inspect the
Warehouse and determine the source of the water intrusion.[11]
Raulston L. Travis ("Travis"), an engineer with Rimkus, was
assigned to Atain's case.[12]  On October 11, 2017, Travis inspected
the Warehouse and determined that the water intrusion occurred at
tears, open gaps, and seam openings in the roof that were a result
of normal wear and tear, not Hurricane Harvey.[13]  On November 14,
2017, Atain, through its third-party administrator Minuteman
Adjusters ("Minuteman"), denied Atlas's claim on the basis that the
Policy excluded coverage for damage to inventory where water

---

[7]     See id.

[8]     See Doc. 23-1, Ex. A-2 to Atain's Mot. for Part. Summ. J., VeriClaim
Report p. 4.

[9]     See id. p. 3.

[10]    See id. p. 1.

[11]    See Doc. 23-1, Ex. A-3 to Atain's Mot. for Part. Summ. J., Travis
Report pp. 169 of 219.

[12]    See id.

[13]    See id. pp. 171-72 of 219.

3

entered the Warehouse through damage caused by wear and tear rather than a covered cause of loss.[14]

## B.  **Procedural Background**

Atain filed this lawsuit on April 10, 2018, seeking a declaration that the water damage to Atlas's inventory was not covered by the Policy.[15]  On June 11, 2018, Atlas answered Atain's complaint and asserted counterclaims for breach of contract and violations of the Texas Insurance Code and Deceptive Trade Practices Act ("DTPA").[16]  On July 24, 2018, following the joint motion of the parties, the court realigned the parties so that Atlas was the plaintiff and its counterclaims comprised the live complaint.[17]

On October 22, 2019, Atain filed its pending motion for partial summary judgment and motion to exclude.[18]  On the same day, Atlas filed its pending motion for partial summary judgment and motion to exclude.[19]  The parties' motions are ripe for the court's consideration.

---

[14]    See Doc. 23-1, Ex. A-5 to Atain's Mot. for Part. Summ. J., Claim Denial.

[15]    See Doc. 1, Atain's Compl.

[16]    See Doc. 6, Atlas's Ans. and Countercl.

[17]    See Doc. 12, Ord. Dated July 24, 2018.

[18]    See Doc. 23, Atain's Mot. for Part. Summ. J.; Doc. 24, Atain's Mot. to Exclude Vacek.

[19]    See Doc. 27, Atlas' Mot. for Part. Summ. J.; Doc. 25, Atlas's Mot. to Exclude Spinazzola.

## II.  Legal Standards

The following standards are relevant to the court's resolution of the pending motions.

### A.  <u>Motion for Summary Judgment Standard</u>

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.</u>, 759 F.3d 498, 504 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  <u>Coastal Agricultural Supply, Inc.</u>, 759 F.3d at 504 (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>See</u> <u>id.</u> at 505 (quoting <u>Celotex Corp.</u>, 477 U.S. at 323).  If the movant carries its burden, the nonmovant may not rest on the allegations

5

or denials in the pleading but must respond with evidence showing a genuine factual dispute.  See id.  The court must accept all of the nonmovant's evidence as true and draw all justifiable inferences in her favor.  Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 505 (5th Cir. 2014)(quoting Anderson, 477 U.S. at 255).

**B.    Expert Testimony Standard**

Under the Federal Rules of Evidence and related case law, an expert may be qualified by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  "To qualify as an expert, the witness must have such knowledge or experience in [his] field or calling to make it appear that his opinion or inference will probably aid the trier in [the] search for truth."  United States v. Hicks, 389 F.3d 514, 524 (5th Cir. 2004)(quoting United States v. Bourgeois, 950 F.2d 980, 987 (5th Cir. 1992)).  If an opinion is based solely or primarily on experience, it "must be grounded in an accepted body of learning or experience in the expert's field."  Fed. R. Evid. 702, advisory committee's note, 2000 Amends.  The witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts.  Id.

Although an expert need not be highly qualified to testify on a given topic, his testimony on subjects in which he is not

qualified must be excluded.  Huss v. Gayden, 571 F.3d 442, 452 (5th Cir. 2009).  An additional limitation on expert witnesses is that they may not offer conclusions of law.  C.P. Interests, Inc. v. Cal. Pools, Inc., 238 F.3d 690, 697 (5th Cir. 2001)(citing Owen v. Kerr McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983)).

The expert's testimony must be both relevant and reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999); Smith v. Goodyear Tire & Rubber Co., 495 F.3d 224, 227 (5th Cir. 2007); see also Fed. R. Evid. 702 & advisory committee's note, 2000 Amends. The burden of establishing this predicate for the expert's testimony falls on the party producing the expert.  See Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998).  The trial court has the responsibility of determining whether that party has met its burden.  Fed. R. Evid. 104(a); Mathis v. Exxon Corp., 302 F.3d 448, 459-60 (5th Cir. 2002); see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993).  The court also determines, as a matter of law, whether the expert is qualified to testify on the subjects on which he offers opinions.  Mathis, 302 F.3d at 459.  The trial judge has "wide latitude in determining the admissibility of expert testimony;" yet, "the rejection of expert testimony is the exception rather than the rule."  Fed. R. Evid. 702, advisory committee's note, 2000 Amends.; Wilson v. Woods, 163 F.3d 935, 936-37 (5th Cir. 1999)(quoting Watkins v. Telsmith, Inc., 121 F.3d 984, 988 (5th Cir. 1997)).

To be relevant, the testimony must assist "the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; see also United States v. Hicks, 389 F.3d 514, 524 (5th Cir. 2004); Daubert, 509 U.S. at 591. The Federal Rules of Evidence define relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. In other words, the expert testimony must be applicable to the facts in issue. Daubert, 509 U.S. at 592-93.

Reliability hinges on the sufficiency of the facts or data upon which the opinion is based, the dependability of the principles and methods employed, and the proper application of the principles and methods to the facts of the case. See Fed. R. Evid. 702. The trial judge must make certain that the expert applied "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd., 526 U.S. at 152.

### III. Motions to Exclude

Both parties have filed motions to exclude the other party's expert. Atain argues that the opinions of Atlas's expert, Sam Vacek ("Vacek"), should be excluded. Atlas reciprocates, arguing that Atain's expert, Michael Spinazzola ("Spinazzola"), should be excluded from testifying.

8

**A.    Motion to Exclude Vacek**

Vacek is a structural and architecture engineering expert retained by Atlas to opine on the cause of the water intrusion. Atain argues that Vacek should be excluded from testifying that: (1) a tornado impacted the Warehouse; and (2) tornadic wind caused the seams of the Warehouse's metal siding to temporarily separate and allow water to enter the Warehouse.[20]  Atain argues that these opinions should be excluded because they are unreliable.

**1.    Tornado Impact**

Atain argues that there is no data to support Vacek's theory that a tornado impacted the Warehouse.  Atlas argues that Vacek's opinion is not that a tornado impacted the Warehouse, but rather, that winds caused by a nearby tornado impacted the Warehouse.  In its reply, Atain points to Vacek's deposition testimony where he opined that there was a "high probability" that a tornado impacted the Warehouse.[21]  Atain also argues that, per Vacek's testimony, there was no evidence of wind or tornado damage to the Warehouse.[22]

There appears to be no dispute that a tornado was approximately one mile away from the Warehouse.[23]  But there is no evidence in the record to suggest that the Warehouse was actually

---

[20]    See Doc. 24, Atain's Mot. to Exclude Vacek pp. 1-2.

[21]    See Doc. 38-1, Ex. 1 to Atain's Reply in Support of Mot. to Exclude Vacek, Vacek Dep. Tr. p. 44.

[22]    See Doc. 24, Atain's Mot. to Exclude Vacek. pp. 7-10.

[23]    See Doc. 38, Atain's Reply in Support of Mot. for Summ. J. pp. 3-4.

impacted by that tornado or another tornado.  Atlas has represented that Vacek does not intend to give testimony that a tornado impacted the Warehouse, and there is no evidence suggesting that a tornado impacted the Warehouse.  The distinction between winds caused by that tornado impacting the Warehouse versus the tornado itself impacting the property is slight.  However, to the extent that Vacek intends to opine that a tornado actually impacted the Warehouse, he is not permitted to do so.

### 2.   Metal Siding Separation

Vacek also opined that the winds from the nearby tornado caused the metal siding located between the high roof and low roof of the Warehouse to temporarily separate, which allowed water to enter.[24]  Atain argues that this opinion is unreliable because it is not supported by academic research or literature and Vacek has not tested his theory.  Atlas argues that Vacek's experience allows him to opine based on his previous observations.

In his report, Vacek stated that the separation of metal siding "has been observed in the past when high winds and rain occur simultaneously."[25]  When asked when he had observed that condition, Vacek stated "Metal buildings. They're notorious for that."[26]  Vacek was asked if there is any literature to support his

---

[24]   See id. p. 9.

[25]   See id.

[26]   See Doc. 24-5, Ex. E to Atain's Mot. to Exclude Vacek, Vacek Dep. Tr. pp. 91-92.

metal-siding-separation theory.[27]   Vacek responded that he would have to look it up and had not done so for his report.[28]  When asked if there was an academic research paper supporting his theory, Vacek stated that he was not aware of any but was sure something was out there.[29]  Vacek also testified that he: (1) was not aware of any manufacturer statements addressing his theory; (2) had never written about his theory; and (3) had never done a physical test of his theory.[30]

The Fifth Circuit "has upheld the admission of expert testimony where it was based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 247 (5th Cir. 2002).  Here, Atlas seeks to admit Vacek's testimony without any evidence that it is supported by the engineering community.  The court is not a member of that community and therefore an evidentiary foundation is required before his opinion may be considered.  There is nothing in the record before the court that supports Vacek's contention that wind from a tornado one mile away will cause metal siding to temporarily separate and allow a water intrusion.

---

[27]    Id.

[28]    Id.

[29]    Id. p. 94.

[30]    Id. pp. 94, 113.

Finally, Vacek's theory does not concern the type of unique scenario where experts have been allowed to opine based on their specialized knowledge, training, experience, and first-hand observation without a showing of evidentiary support in the scientific community.  See e.g., St. Martin v. Mobil Expl. & Producing U.S. Inc., 224 F.3d 402, 406 (5th Cir. 2000)(allowing a qualified expert to opine on damage caused to a marsh where his specific theory lacked relevant community support because "a court could not rationally expect that a marshland expert would have published a peer-reviewed paper on each possible permutation of factors or each damaged area of marsh").  Here, if Vacek's theory was reliable, there would undoubtedly be some support for it in the engineering community.

Vacek is excluded from testifying that the metal siding of the Warehouse temporarily separated due to wind pressure from a nearby tornado.

**B.    Motion to Exclude Spinazzola**

Spinazzola is designated as Atain's expert on insurance industry standards.  Atlas argues that Spinazzola should be excluded from testifying because Atain has not complied with Federal Rule of Civil Procedure ("Rule") 26 with regard to Spinazzola's designation.

Under Rule 26(a)(2)(B), if a witness is "retained or specially employed to provide expert testimony" then the witness must provide

a written report.  Under Rule 26(a)(2)(C), if a witness is not required to provide a written report, then their disclosure must state: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."  Atlas argues that Spinazolla is "specially employed" to provide expert testimony and did not provide a written report.  Alternatively, Atlas argues that Spinazzola's disclosure is insufficient under Rule 26(a)(2)(C).

"[A] witness is `specially employed' if []he has no personal involvement in the facts giving rise to a case and is instead engaged specifically by a party to provide opinions and testimony bearing on the particulars of a case, without monetary payment for those services." Tolan v. Cotton, Civ. Act. No. H-09-1324, 2015 WL 5332171, at *7 (S.D. Tex. Sept. 14, 2015)(citing Huffman v. City of Conroe, Civ. Act. No. H-07-1964, at *6-7 (S.D. Tex. July, 31, 2008))(internal quotation marks omitted).  Courts in this district have summarized the requirements of a Rule 26(a)(2)(C) disclosure as follows:

> The Court finds that a summary of opinions under Rule 26(a)(2)(C) means a brief account of the main opinions of the expert, and that the opinions must state a view or judgment regarding a matter that affects the outcome of the case.  A mere statement of the topics or their opinions is insufficient.  Further, this Court finds that a summary of facts supporting those opinions under Rule 26(a)(2)(C) means a brief account of facts—only those on which the expert actually relied in forming his or her opinions—that states the main points derived from a

> larger body of information; merely stating the topic
> matters of facts relied upon does not suffice.
> Similarly, it does not suffice to reference large bodies
> of material sources of facts, without stating a brief
> account of the main points from those large bodies on
> which the expert relies.

Carr v. Montgomery County, Tex., CIV.A. H-13-2795, 2015 WL 5838862,

at *2 (S.D. Tex. Oct. 7, 2015)(internal quotation marks

omitted)(quoting Tolan, 2015 WL 5332171 at *6).

Atain designated Spinnazola as a Rule 26(a)(2)(C) expert with

the following summary:

> Mr. Spinazzola is expected to testify regarding his
> investigation and handling of Plaintiff's claim for
> damage to Plaintiff's property. Mr. Spinazzola is also
> expected to testify concerning industry standards
> applicable to investigating and handling wind and water-
> related claims for property damage, and that Atain's
> investigation and handling of Plaintiff's claim complied
> with such standards.  Mr. Spinazola may also respond to
> and rebut the opinions offered by Plaintiff's experts.
> His opinions will be based on, among other things, the
> investigation of the claim, his analysis of the materials
> provided to Atain and its agents, Atain's participation
> in investigating property damage, communications with
> other experts and witnesses, industry practices,
> literature, articles and/or other materials he has
> reviewed concerning or relating to the damages, and his
> education, experience, skill and training.[31]

Spinazzola testified that he was not personally involved in the

handling of Atlas's claim and that he did not become involved in

this dispute until March 8, 2018, after Atlas's claim had already

been denied and approximately one month prior to this lawsuit's

---

[31]    See Doc. 25-1, Ex. A to Atlas's Mot. to Exclude Spinazzola, Atain's
Expert Witness Discs. p. 2.

filing.[32]

Spinazzola's testimony makes it clear that he was not personally involved in the facts giving rise to this lawsuit. Accordingly, Spinazzola is "specially employed" such that a Rule 26(a)(2)(B) report was required. See Tolan, 2015 WL 5332171 at *7. Further, Spinazzola's Rule 26(a)(2)(C) disclosure only offers one generalized opinion that Spinazzola will testify on - that Atain's investigation and handling of Atlas's claim complied with industry standards. The disclosure then lists topic matters of facts relied on without giving a brief account of any facts Spinazzola relied on. Accordingly, Spinazzola's Rule 26(a)(2)(C) disclosure was insufficient even if an expert report was not required.

Where a party fails to comply with Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In assessing whether a Rule 26 violation is harmless, the court looks to "four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." Tex. A&M Research Found. v. Magna Transp., Inc., 338 F.3d 394, 402 (5th Cir. 2003)(citing United States v. $9,041,598.68, 163 F.3d 238, 252 (5th

---

[32]    See Doc. 30-3, Ex. C to Atain's Resp. to Atlas's Mot. to Exclude Spinazzola, Spinazzola Dep. Tr. p. 18.

Cir. 1998)).

Here, the parties are in agreement that Spinazzola's testimony is of high importance in defending against Atlas's bad faith claim. Atlas argues that the other three factors weigh in its favor.

Atlas argues that it will be highly prejudiced if Spinazzola's testimony is allowed because the lack of a report amounts to trial by ambush. However, Atlas knew that Spinazzola would testify that it was his opinion that Atain complied with industry standards in investigating and handling Atlas's claim based on his Rule 26(a)(2)(C) disclosure or to complain about it before the discovery period ended. Further, Atlas had the opportunity to depose Spinazzola after receiving the insufficient Rule 26(a)(2)(C) disclosure. Thus, to the extent Atlas required more specific information regarding Spinazzola's testimony, Atlas could have asked for additional information during the discovery period. Accordingly, any prejudice to Atlas must be attributed to its own inaction.

Atlas next argues that a continuance could not cure the Rule 26(a) deficiencies because Spinazzola could not now become involved in the facts giving rise to this lawsuit. Atlas neglects to consider that a continuance would allow Spinazzola to author a report in compliance with Rule 26(a)(2)(B). Thus, the deficiencies could easily be cured by a continuance, if necessary.

Finally, Atain's counsel represented that this is the first

time a representative of an insurer designated as a Rule 26(a)(2)(C) expert has been challenged in any case on which he has worked. As such, this failure appears to be unintentional. The court gives no weight to this explanation for Atain's failure to comply with the Rules.

The court has significant discretion when determining whether to permit expert testimony. See Eiland v. Westinghouse Elec. Corp., 58 F.3d 176, 180 (5th Cir. 1995)(citing Smogor v. Enke, 874 F.2d 295, 297 (5th Cir. 1989)). Accordingly, the court finds that Spinazzola's testimony should not be excluded given the high importance of his testimony coupled with the relatively small prejudice to Atlas.[33]

## IV.   Motions for Summary Judgment

Both parties have filed motions for partial summary judgment. Atlas also objects to Atain's summary judgment evidence. The court will address Atlas's objections before proceeding to the parties' motions.

### A.   <u>Atlas's Objections</u>

Atlas objects to the following as hearsay: (1) Frazier's report wherein he recommended that a structural forensic engineer be hired; (2) Travis's report wherein he found that the water intrusion occurred at tears, open gaps, and seam openings that were

---

[33]   The court also notes that, based on recommendations made below, Spinazzola's testimony as an expert may become unnecessary if those recommendations are adopted.

caused by normal wear and tear, not Hurricane Harvey; and (3) Travis's supplemental report wherein he rebutted Vacek's conclusions.  Atlas also objects to paragraphs one and seven of Spinazzola's declaration on the basis of no personal knowledge.

At the summary judgment stage, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

### 1.   Expert Reports

Atlas asserts that the expert reports attached to Atain's Motion for Summary Judgment are hearsay because Spinazzola's declaration does not properly authenticate the relied-upon reports as business records.  Atain has supplemented its summary judgment evidence with a declaration made by Travis, the author of two of the expert reports.[34]   In the declaration, Travis properly authenticates his reports.  Regarding Frazier's report, Frazier authenticated his report during his deposition and Spinazzola authenticated the report in his declaration.[35]  Accordingly, these reports are permissible summary judgment evidence.  See e.g., Allstate Ins. Co. v. Helmsco Inc., 6:15-CV-114, 2016 WL 3223325, at *2 (W.D. Tex. Feb. 16, 2016).

---

[34]   See Doc. 37-1, Ex. 1 to Atain's Reply in Support of Mot. for Summ. J.; Doc. 55, Ord. Dated Jan. 7, 2020.

[35]   See Doc. 23-4, Ex. C to Atain's Mot. for Summ. J., Frazier, Dep. Tr.; Doc. 23-1, Ex. A to Atain's Mot. for Summ. J., Spinazzola Decl.

Regardless, Atlas's objections are misplaced.  The question under Rule 56 is whether the evidence contained in the objected-to reports can be presented in a form that would be admissible at trial.  Fed. R. Civ. P. 56(c)(2).  Atain could easily present the information in these reports by calling the authors to the stand. In fact, that is exactly how expert testimony is typically presented.

### 2.  Spinazzola Declaration

In paragraph one of his declaration, Spinazzola states that he is the Director for Minuteman and has personal experience regarding the claim that is the subject of this lawsuit.  In paragraph seven, Spinazzola states that: (1) Atain determined there was no coverage under the Policy in reliance on the Rimkus report prepared by Travis; (2) Minuteman sent correspondence on behalf of Atain to Atlas notifying it of the claim denial; (3) an authentic copy of the correspondence sent to Atain was attached to his declaration; and (4) the correspondence was a business record.[36]

Atlas argues that Spinazzola is not competent to testify on these matters because he was not involved in the claim until after it had already been denied.  While true, Spinazzola states that he is a custodian of record for Minuteman and, at his deposition, testified that he reviewed the entire claim file.[37]  He was not

---

[36]    See Doc. 23-1, Ex. A to Atain's Mot. for Summ. J., Spinazzola Decl.

[37]    See id.; Doc. 27-5, Ex. B to Atlas's Mot. for Summ. J., Spinazzola Dep. Tr. pp. 5, 9.

involved in the decision to deny coverage, but has reviewed the relevant documents created in the making of that decision and has personal knowledge of those documents' contents. Furthermore, that Atain denied coverage based on Travis's report is stated very clearly in the denial letter.[38]

For these reasons, Atlas's objections are **OVERRULED.**

### B.   <u>Atain's Motion for Partial Summary Judgment</u>

Atain argues that Atlas's causes of action under the DTPA and Texas Insurance Code should be dismissed because Atain reasonably relied on its experts in denying Atlas's claim.   Atlas counters that Atain's reliance was unreasonable.

Under Texas law, extracontractual claims under the Texas Insurance Code and DTPA require the same showing as does a bad faith claim or recovery is precluded.   See <u>Higginbotham v. State Farm Mut. Auto. Ins. Co.</u>, 103 F.3d 456, 460 (5th Cir. 1997) (holding that extracontractual claims pursuant to the Texas Insurance Code require the same predicate for recovery as bad faith causes of action and that, because insurer was found not to have acted in bad faith, the insured's claims under the Texas Insurance Code were also properly dismissed); <u>Mid-Continent Cas. Co. v. Eland Energy, Inc.</u>, Nos. 3:06-C1576-D, 3:06-CV-1578-D, 2009 WL 3074618, at *26 & n. 28 (N.D. Tex. 2009) (unpublished) (stating that a defense to an insured's common law bad faith claim also serves to defeat each of

---

[38]      <u>See</u> Doc. 23-5, Ex. A-5 to Atain's Mot. for Summ. J., Denial Letter.

its other extracontractual causes of action so long as the statutory claims are based on the same predicate acts).

Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims. See Arnold v. Nat'l County Mut. Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987). A cause of action for breach of the duty of good faith and fair dealing exists when the insurer "has no reasonable basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." Higginbotham, 103 F.3d at 459 (citing Arnold, 725 S.W.2d at 167).

In order to sustain such a claim, the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim. Aranda v. Ins. Co. of N. Am., 748 S.W.2d 210, 213 (Tex. 1988) overruled on other grounds by Tex. Mut. Ins. Co. v. Ruttiger, 381 S.W.3d 430, 433 (Tex. 2012). "A bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim." Higginbotham, 103 F.3d at 459. "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." Id. (citing Lyons v. Millers Cas. Ins. Co., 866

S.W.2d 597, 600 (Tex. 1993)).

"Where an insurer relies upon expert reports to deny a claim, the insurer's reliance 'will not necessarily shield the carrier if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable.'" Russell v. Scottsdale Ins. Co., 4:10-CV-3057, 2014 WL 12770115, at *6 (S.D. Tex. Sept. 30, 2014)(quoting State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 448 (Tex. 1997)). "In determining the reasonableness of an insurer's decision a court reviews the facts that were available to the insurer at the time of denial." Lee v. Catlin Specialty Ins. Co., 766 F. Supp. 2d 812, 818 (S.D. Tex. 2011)(citing Viles v. Security Nat'l Ins. Co., 788 S.W.2d 566, 567 (Tex. 1990)).

Here, Atain denied Atlas's claim based on the findings made by Travis.  Atlas does not dispute that, if true, Travis's findings would create a bona fide dispute as to whether there was coverage under the Policy.  Rather, Atlas asserts that there is a fact issue regarding whether Atain unreasonably failed to investigate Atlas's claim.

Atlas argues that Atain's investigation was unreasonable because: (1) Atain did not investigate the wall directly above the damaged inventory; (2) Atain did not investigate weather conditions during the adjustment of the claim; (3) Atain applied and relied on a coinsurance penalty; and (4) Vacek's testimony was supported by

evidence.[39]  The application of a coinsurance penalty and Vacek's testimony are not material to the court's inquiry because both occurred well after Atain had denied Atlas's claim.  See id.

Regarding Atlas's argument that Atain did not investigate the wall directly above the damaged inventory, the court disagrees. The wall in controversy was located where the high part of the Warehouse's roof met the low part of the roof.[40]  Frazier observed no damage to this wall during his investigation.[41]  Travis investigated the entire roof of the Warehouse during his investigation.[42]

Nonetheless, Atlas essentially argues that because Travis did not consider Vacek's metal-siding-separation theory, his report was incomplete.  First, as discussed above, Vacek's opinion on this topic has been excluded as unreliable.  Second, Travis looked at the entire roof, which included the wall in question.  Travis observed open gaps, deterioration, tears, water stains evidencing pooling, and cracking in various areas on the roof.[43]  Travis determined that the water entered through these existing defects in the roof.  Atain's investigation cannot be found to be unreasonable

---

[39]   See Doc. 32, Atlas's Resp. to Atain's Mot. for Summ. J. pp. 9-23.

[40]   See Doc. 27-6, Ex. C to Atlas's Mot. for Partial Summ. J., Frazier Dep. Tr. pp. 52-53.

[41]   See id. p. 139.

[42]   See Doc. 23-1, Ex. A-3 to Atain's Mot. for Summ. J., Travis Report p. 4.

[43]   See id.

on the basis that its expert did not consider Vacek's speculation that the metal siding must have separated to allow a water intrusion, and then closed without causing any visible damage to the siding while the roof's existing wear-and-tear defects allowed little to no water to enter the Warehouse.

Also, the court finds no factual support for Atlas's contention that Atain did not investigate weather conditions. In his report, Travis authored a section titled "Weather."[44] In that section, Travis discussed that the area experienced wind gusts between fifty to sixty miles per hour and maximum sustained winds of between forty and fifty miles per hour.[45] Both ranges had a rate of error of up to plus or minus twenty percent.[46] Atlas argues that Travis's investigation was insufficient because he did not consider tornadoes and used a weather service that did not account for tornadoes.[47] First, as discussed above, there is no evidence that the property was actually struck by a tornado. Second, Travis clearly considered the high wind speeds in the area as a part of his report. Atain's investigation is not unreasonable on the basis that its independent investigator did not consider whether a tornado hit the Warehouse when there was no evidence of tornadic

---

[44]    See id.

[45]    See id.

[46]    See id.

[47]    See Doc. 32, Atlas's Resp. to Atain's Mot. for Summ. J. pp. 19-22.

impact.

On the record before the court, Atain hired VeriClaim to investigate the Warehouse.  VeriClaim sent Frazier to investigate. Frazier recommended that a structural forensic engineer investigate the Warehouse.  Atain then hired Rimkus who sent Travis to investigate the Warehouse.  Travis investigated the Warehouse and determined that water entered through wear-and-tear defects in the roof not caused by Hurricane Harvey.

Atlas has been unable to point to any defect in Travis's report that would make Atain's reliance on the report unreasonable. Accordingly, Atlas has failed to raise a fact issue that Atain had no reasonable basis for denying its claim.  Summary judgment should be granted on Atlas's extracontractual claims under the Texas Insurance Code and DTPA.  Higginbotham, 103 F.3d at 459 (citing Arnold, 725 S.W.2d at 167).

## C.   **Atlas's Motion for Partial Summary Judgment**

Atlas moves for summary judgment on the following affirmative defenses raised by Atain: (1) coinsurance; (2) actual cash value endorsement; (3) existing damage exclusion endorsement; (4) various exclusions under Policy Section B; (5) failure to mitigate; (6) third-party negligence; (7) contributory negligence and comparative fault; (8) superseding or intervening causes; (9) limitation or reduction from other insurance contracts; (10) offset or credit.[48]

---

[48]    See Doc. 27, Atlas's Mot. for Summ. J.

Atain has withdrawn the following affirmative defenses: (1) coinsurance; (2) actual cash value endorsement; (3) failure to mitigate; (4) superseding or intervening causes; (5) limitation or reduction from other insurance contracts; and (6) offset or credit.[49]   Thus, the court considers them abandoned and Atlas's motion for summary judgment on them moot.   The court now proceeds to the contested affirmative defenses.

**1.   Exclusions Under Policy Section B**

Atlas argues that Atain should be precluded from asserting the following exclusions contained in the Policy:

2.   We will not pay for loss or damage caused by or resulting from any of the following:

. . .

d.   (1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

. . .

(4) Settling, cracking, shrinking or expansion;

. . .

3.   We will not pay for loss or damage caused by or resulting from any of the following

. . .

c. Faulty, inadequate or defective:

. . .

---

[49]      See Doc. 44, Atain's Resp. to Atlas's Mot. for Summ. J. pp. 12-13.

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

. . . .[50]

Atlas argues that the phrase "caused by or resulting from" means that the items listed in the exclusions must directly cause a loss for the exclusions to apply.[51]  For example, Atlas asserts that its damaged inventory would have to experience "wear and tear" itself to be excluded from coverage.  The court disagrees with Atlas's interpretation.

Texas district courts have enforced similar exclusions containing the phrase "caused by or resulting from."  See Culpepper v. U.S. Fire Ins. Co., 3:12-CV-01381-L, 2013 WL 1294086, at *9 (N.D. Tex. Mar. 31, 2013); Gen. Star Indem. Co. v. Sherry Brooke Revocable Tr., 243 F. Supp. 2d 605, 610–11 (W.D. Tex. 2001).  Those courts have enforced the phrase by its plain meaning.  The plain meaning of the phrase "caused by or resulting from" is not "directly caused by."  Rather, the phrase is broader and encompasses the indirect effects of the items listed.

Atlas does not cite any cases supporting its interpretation that its inventory itself must have suffered from wear and tear or

---

[50]    Doc. 27-2, Ex. A-1 to Atlas's Mot. for Summ. J., The Policy pp. 52-54.

[51]    See Doc. 27, Atlas's Mot. for Summ. J. p. 16.

another of the listed defects for the exclusions to apply. Nonetheless, Atlas argues that because the term "indirectly" is used in a different Policy exclusion, "caused by or resulting from" cannot include the indirect effects of the listed defects.[52]   In other words, if Atain wanted "caused by or resulting from" to include indirect effects, Atain would have explicitly used the word "indirect."  Under the same logic, the relevant Policy exclusions would contain a phrase similar to "caused directly by" if they were intended to only include the direct effects of one of the defects listed.  As Atlas has not cited contrary authority and the court finds no merit in Atlas's logic, the plain meaning controls.

Atain has presented sufficient evidence on each of the listed defects that there is a fact issue regarding the Section B exclusions.  Accordingly, Atlas's motion should be denied regarding the exclusions under Section B of the Policy.

The court also notes that in its reply brief, Atlas modifies its argument regarding exclusions under Section B.3.  Specifically, Atlas argued that, under the Policy, if the defects listed in Section B.3. resulted in a covered cause of loss, then there was coverage under the Policy.  The court will not make a determination regarding this interpretation for two reasons.  First, this argument was improperly raised in a reply brief.  Second, there is a fact issue as to which defect, if any, under Section B caused or

---

[52]   Doc. 27-2, Ex. A-1 to Atlas's Mot. for Summ. J., The Policy p. 51.

resulted in the damage to Atlas's inventory.  That fact issue must
be resolved at trial.

### 2. Existing Damage Exclusion

The Policy provides that it does not insure any existing
damage or loss or damage that arises out of any existing damage.[53]
Existing damage is defined as "any visible or nonvisisible damages
that existed before the inception date of this policy."[54]   The
Policy's inception date was April 2, 2017.[55]

Atlas argues that Atain has no evidence supporting the
existing damage exclusion.  Atain has provided an email from
Sidaros to Atlas's landlord wherein Sidaros stated that the roof
had lacked maintenance for years.[56]  Additionally, as discussed
above, Travis found that the damage to the roof was a result of
normal wear and tear and predated Hurricane Harvey.  Atain's
evidence is sufficient for this affirmative defense to proceed to
trial.

Finally, Atlas's alternative argument that the inventory
itself did not have "existing damage" lacks merit because it
completely ignores the Policy's exclusion of loss or damage that
arises out of any existing damage caused by inadequate maintenance.

---

[53]   Doc. 27-2, Ex. A-1 to Atlas's Mot. for Summ. J., The Policy p. 23.

[54]   Id.

[55]   Id. p. 5.

[56]   See Doc. 44-3, Ex. 4 to Ex. C to Atain's Resp. to Atlas's Mot. for
Summ. J., Email p. 45 of 54.

29

### 3.    Fault of Third Parties

Atlas argues that Atain has no evidence that the damage to Atlas's inventory was the fault of a third party.  As discussed above, Atain has produced an email discussing inadequate maintenance of the roof by Sidaros's landlord.  Atain's evidence is sufficient at this stage.

### 4.    Contributory Negligence/Comparative Fault

Atlas argues that Atain has no evidence that the damage to its inventory was in any way Atlas's fault.  As previously discussed, Atain has presented evidence that the lack of maintenance to the Warehouse's roof had been ongoing prior to Hurricane Harvey and was known to Sidaros.  Atain has met its summary judgment burden on this affirmative defense.

### V.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that: (1) Atain's Motion for Partial Summary Judgment be **GRANTED** and Atlas's extracontractual claims under the Texas Insurance Code and DTPA be **DISMISSED**; (2) Atlas's Motion for Partial Summary Judgment as to Atain's affirmative defenses of coinsurance, actual cash value endorsement, failure to mitigate, superseding or intervening causes, limitation or reduction from other insurance contract, and offset or credit, be **DENIED AS MOOT** based on Atain's voluntary relinquishment of those defenses; and (3) Atlas's Motion for Summary Judgment be **DENIED** in all other regards.

30

It is **ORDERED** that: (1) Vacek is excluded from testifying that a tornado impacted the Warehouse or that the metal siding of the Warehouse temporarily separated due to wind pressure from a nearby tornado; and (2) Atlas's Motion to Exclude Spinazzola is **DENIED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 10th day of June, 2020.

Nancy K. Johnson
United States Magistrate Judge